Let's next take up People v. Pinkas. Argument for the appellate. Who's the court? My name is Maggie Heim and I'm arguing on behalf of Brian Pinkas. This is his direct appeal on the first degree murder conviction. While there are many issues in the brief, I'll be focusing on the two where the state agreed there was some sort of problem, although they did not agree that there was any prejudice. At the center of this case is a faulty gun with a custom handle. The gun expert then employed by the Illinois State Police examined this gun after Sharon Reynolds was shot during a late night argument with a very drunk Brian Pinkas. When the expert received the gun, it was jammed so that it couldn't shoot at all, and he had to beat the gun to dislodge the jam. When he did this, he realized that the bolt which had been used to connect the custom handle to the gun was too long, and as a result, the bolt interfered with how the gun could function. If the bolt was in one position, then the gun could fire somewhat indiscriminately or when it was simply cocked. If the bolt was in another position, it wouldn't fire even when the trigger was pulled. There was almost no testimony at trial about what Brian knew about this bolt or on how this bolt was positioned when he grabbed the gun on that night. His brother Scott testified that months prior to the shooting, sometime in the fall of 2003, Brian showed him how the gun was no longer shooting but was still eject shells when it was cocked. Now, Brian, after the shooting occurred, called 911, and he made no effort to conceal the crime scene, and at trial, he made no contest that he was the one who shot the gun. Instead, the defense theory was that Brian should be found guilty of a lesser offense, where the evidence indicated that he didn't know the gun was capable of firing when he grabbed it. Thus, the tight issue that the jury was really tasked with deciding is whether the state proved beyond a reasonable doubt that this was an intentional shooting, or was it reasonable to think that Brian thought he was grabbing a broken gun with tragic consequences? One of the questions in my mind was when you grab a defective gun, assuming that it's defective, do you point it in your girlfriend's face? I mean, seriously. I mean, I'll tell you right off the bat. Whether it's defective or not, the evidence is clear. He pointed it in her face. I am not arguing that they were not fighting. I am not arguing that Brian engaged in good behavior. What I am arguing, what the trial defense attorney is arguing, is that he did not know there was a substantial likelihood that he was going to cause great bodily harm. He was grabbing a gun to try and terrify his girlfriend. This is not good behavior, but it's enough to prove first-degree murder beyond a reasonable doubt. If he truly believed that that gun could not fire when he grabbed it, I don't think it is. You got an instruction on involuntary manslaughter. Your position was argued to the jury, right? That's correct. And they chose to believe that the elements of first-degree murder were proven. Well, I think that's where we run into the errors that are here. Part of the problem is that this is a real tight issue. They need to decide this was obviously an incredibly tragic case where Brian did not engage in perfectly good behavior. And they need to decide what to be thinking about this gun and have the state prove beyond a reasonable doubt that first-degree murder occurred. And if we look at the first error that I'd like to talk about, it's that the jurors allowed to hear evidence that implied Sharon had been previously abused by Brian. And I think if you make this case not about one tragic night where there's fighting going on and where he grabs a broken gun and instead make it about years of domestic abuse, suddenly the jury is going to be a lot more likely to say, this man deserves a first-degree murder conviction regardless of what the evidence of intent is. Now, the case law is that jurors shouldn't hear about evidence of prior injuries to the same victim unless they also hear evidence which connects the defendant to those injuries. And that's because of how prejudicial it is to imply that there are prior crimes against the same victim. Here, the jury was allowed to hear from two of Sharon's loved ones that twice before they'd seen bruises or cuts on her face. And the obvious implication from this was that Brian had a habit of hitting her, and the prosecutor made this explicit during closing argument when she referred to this as a classic domestic violence killing and to talk about this being not Sharon's first rodeo. But there was no documented history of abuse. There were no charges filed based on the allegations that the brother and husband testified about. No one ever saw or heard Brian abuse Sharon prior to the night in question. And there was – and yet, Sate was able to argue that there was this ongoing abuse beginning in December, at least as early as December of 2000, which would have been towards the beginning of their relationship. Was there an objection made to that argument during closing argument? Not to the closing argument. There was an objection made to them ever hearing about these bruising, and that was specifically because defense counsel said this is completely unreliable. The two witnesses who are coming forward with it are clearly biased because Sharon was their loved one, and no one wants her to be dead. There was a lack of details about what exactly they saw, you know, and when exactly they saw it. One of the witnesses changed by six months when he had seen the bruising. The other witness changed how often he'd seen bruising. There was no corroboration where there were no police reports. They hadn't told anyone else. And the timing of this closure was that this came up when police were investigating what they knew was Brian's shooting of Sharon. So defense counsel was trying to keep this bruising out completely by saying, we don't even know the bruises occurred. If the bruises occurred, we don't know that Brian's responsible for them, and this is the type of thing that's going to completely change the jury's mind about what it is they're deciding. Are they deciding that Brian's a bad guy, or are they deciding if the state has proven the elements of the defense beyond a reasonable doubt? From the evidence that was admitted regarding these alleged prior bad acts, do you think the inferences could be drawn which would support the argument the prosecutor made? Do I think the jury could make the inferences based on that evidence? I think they absolutely could, because I think it's two state witnesses who come in. The idea that the jury would look at them and think, oh, this is totally irrelevant to this trial. The court's just letting them tell us about random bruising. I think the human implication of the court allowing these witnesses to come forward is that it's relevant to Brian's guilt or innocence, and that I think the prosecutor connects the dots for them if they haven't already done it by casting this as a classic case of domestic violence and referencing the fact that this was not Sharon's first rodeo. I'd like to point out that the state argues this error should be found harmless because of the hearsay from Sharon implying that Brian was the one responsible for the bruises, but I think it's important to realize that there's no testimony and no affidavits in the record from these witnesses saying what Sharon said to them. All we have is the prosecutor saying in their motion in Lemonade that these witnesses said that Sharon had said these things. There was no hearing on the reliability of this hearsay. Again, there's no testimony. There's no affidavits. And the reason that none of this exists is because the state never brought this hearsay exception at the trial level. And defense counsel, like I said, was arguing vehemently that these bruises were not reliable evidence. It wasn't reliable because of who it was coming from, the timing, the lack of corroboration. And when the trial court told the state, well, I'm not going to let the hearsay in, the state just thought was fine with it. They didn't offer any exception. I think it's unfair for them now on appeal to say, well, assume that this hearsay was reliable, assume that this fits the statutory exception, and to subvert the ability of the defense counsel and of the trial court to have a full record on these matters and to just take the prosecutor's word in the motion in limine as what the true facts of this hearsay were. I think I'd like to talk a little bit about the prosecutor's comments, which you brought up. These issues were not preserved. But I think in this case where the jury was being asked to decide between involuntary manslaughter and first-degree murder, these comments really were something insidious for the jury's ability to make a fair decision. Now, the state recognizes that it's improper for a prosecutor to appeal to a victim's rights or to sentencing issues during a closing argument. But the state argues that under plain error, there would be no prejudice. Again, we argue that the evidence on intent would have been very close in this case where there was evidence that the gun was malfunctioning, and Brian could have believed that the gun was not capable of firing when he grabbed it. Now, the problem with both looking at victim's rights and at sentencing issues is that neither one of those is relevant to any factual issue in any murder trial, but certainly not in a murder trial where the issue is whether or not the defendant knew that the gun was capable of functioning. The other problem is that both of these types of errors encourage a conviction based on sympathy. The first is imploring the jury that you have to get the first-degree murder conviction specifically to give justice to Sharon. This distracts from whether the state has actually met their burden to prove intent beyond a reasonable doubt and encourages a conviction on the greater offense purely on the basis of sympathy. And I think particularly where you're talking about someone who has put himself in the position of looking only for the lesser offense, who's put on evidence from the gun expert that he didn't know that his gun was functioning, it's very difficult for the jury to just disregard these appeals to what's enough justice for Sharon. No one doubts that this was a horrible night. No one doubts that she should be alive today. But for just that reason, it was vital that the jury be allowed to be able to look past the sympathy, look past the desiring of justice for Sharon, and really think about what was the evidence here and what were the elements the state had to prove beyond a reasonable doubt. And it's the same thing where the prosecutor implied that a conviction on the lesser offense would be a law. Thank you, Counselor. You'll have the opportunity for rebuttal. Argument for this state. Faintly support. My name is Sharon Shanahan, and I represent the people of the state of Illinois. The defendant raises two issues technically, but the first issue deals with three particular issues of admissibility of evidence, and the second issue deals with 12 separate issues of alleged prosecutorial misconduct. Given the short time we have here this afternoon, with the Court's permission, I'd like to focus on the evidentiary hearings, I mean the evidentiary issues. I may have to redirect you, but I apologize. It seems to me we have two different kinds of error going on in this case. One, we have error that was objected to and was preserved, and correct me if I'm wrong with Shanahan, and then we have the plain error that arose perhaps during the closing argument. Am I looking at this correctly? Correct. Okay. Go ahead. I just want to make sure my viewpoint is 60,000 feet above. I think the one way I'd like to kind of touch on both issues is to point out the overwhelming evidence that the defendant intentionally killed his girlfriend, that this was not an accident. There's no question that he killed his girlfriend. He'd been kicked out of the bar earlier in the day for belligerent behavior. A friend that returned with Sharon to their home heard Sharon cry, Teresa, come here. She saw Sharon had blood on her face, and the defendant had a sawed-off shotgun in his hand. Teresa heard the defendant tell Sharon to open her mouth so he could blow her fucking head off. Teresa ran from the house and almost immediately heard a gunshot. She also heard the defendant yell, Sharon, look at me while I blow your fucking head off. The defendant did call 911, but at that time he thought the gun wasn't loaded, but at trial he said he thought it was inoperable. The shotgun was loaded and loaded not with one shell but with five. After the shotgun, after the defendant fired the first time and he pumped it, the shotgun ejected a shell. So at that point the defendant knows the gun was loaded. The defendant pulled the trigger again, not just once, but he pulled it a total of three times. His own expert did not establish that the gun was inoperable. Instead, his expert established that the gun operated inconsistently. Sometimes when you pull the trigger it fired, sometimes it didn't, sometimes it went off when the trigger wasn't even pulled. So this is not an inoperable shotgun. It is instead a very, very dangerous shotgun. I'd like to ask why, if you think a shotgun is inoperable, that you keep five shells in it. The defendant showed a little remorse after the shooting. He very calmly told the officer that arrested him that he was sleeping on the couch and the bitch woke me up. The shotgun was fired very close to Sharon's head. Sharon's arms were covered with new bruises and abrasions, which indicates that the defendant and Sharon were in an intense fight immediately prior to the murder. Now, I guess because the defense counsel has chosen to address Issue 2, well. My question always about prosecutors is, having been one, if the evidence is so overwhelming, why do the prosecutors go to the length of the submission about evidence of bruises without some explanation? Why do you pick the goriest photograph in the array? You know, if the evidence is truly overwhelming, why risk the error? There was no error. I mean, there was no error. I said, why risk the error? I didn't say there was error. Well. Obviously, the defendant disagrees with you, so I say, why risk it? But. That is the right and the decision of each individual prosecutor that brings a case. They try to present a big picture. I cannot get into the mind of why this prosecutor chose to handle her case the way she did. I do agree with the original statements of opposing counsel that the state agrees that there was some error. It's just a matter of whether it was harmless or not. The state did agree that there was, that the prosecutor should not have said justice for Sharon. However. We're closing. Okay. Yeah. That's why I wanted to bring out these facts here is because this is not objected to. And. If this is not. This is not harmless error. If there is no prejudice. I mean, excuse me. This is not plain error. If there is no. So. But getting back to the domestic abuse. There. I just want to really kind of touch on it. Briefly. A very well known Illinois Supreme Court case. People versus Illgen. There was evidence that the defendant physically abused and verbally threatened his wife throughout their marriage. Even though the last incidents of physical abuse occurred approximately three years before the victim's death. The Supreme Court found that this tended to negate the likelihood that the shooting was an accident. And to establish the defendant's hostility towards his wife. And here the cuts and bruises were, had some relevance as to whether this was an intentional act or a reckless act. What about the bruising from the year 2000? I mean, the court allowed in bruises from an estranged husband from December of 2000. How is that relevant to this shooting? Very mildly relevant, certainly. And quite honestly, given the fact that the jury knew that that was the only time that he had seen a bruise on Sharon. And given the fact that the victim's brother admitted to loathing the defendant and threatening to kill him. And given the fact that the victim's daughters testified, who had lived with them, testified that she'd never seen the defendant hit her mother. It's harmless error at all. But having said that, there is evidence that this could, should and could have come in under statutory exception. The fact that it didn't come under that statutory exception simply makes it better for the defendant. It's, you know, we know the statement that says better to keep your mouth closed and be thoughtful than to open it and remove all doubt. In this case, better to let the jury wonder if the defendant might have hit his wife before than for it to have come in under the statutory exception and remove all doubt. So the fact that this didn't come in as it should have come in actually worked to benefit the defendant. I'd also like to touch on the crime scene photos. The defendant's brief relies almost exclusively on People v. Garlic. And I think the distinctions between Garlic and this case are very important. The defendant in Garlic admitted a murder where this defendant did not. I think most importantly, though, it's highly questionable that Garlic is good law. If you look at the dissent in Garlic, Justice Jones said that where a photograph is relevant to establishing a fact and issue, it is admissible despite its gruesome nature. He said that the doctor testified regarding the nature and extent of the head wound and the photograph could have been admitted to aid the jury in understanding the medical testimony. And the mere fact that there was oral argument describing the wound did not make the photograph unnecessarily cumulative. Now let's look at the Illinois Supreme Court cases that have been decided since Garlic. Armstrong says even if a photograph is gruesome, it is admissible if it is relevant to corroborate oral testimony or to show the condition of the crime scene. Chapman and Bounds both say that photographs are admissible to show the nature and extent of the victim's injuries and to aid in understanding the testimony of a pathologist or other witness. And Chapman also says that if photographs could aid the jury in understanding testimony, they may be admitted even if cumulative of that testimony. So the very few things that the dissent raises in Garlic, our Supreme Court has agreed to. Thank you, counsel. Reba? So I'd like to first talk about the idea that the evidence in this case was overwhelming. Again, we're contesting only the closeness of the evidence as to whether or not the defendant had the requisite intent for first-degree murder when he grabbed the gun. Counsel points out that he said the gun was not loaded. When it was loaded, it had originally had five shells. But as we came out of the reply brief, two shells had come out of the gun without being fired despite having firing pin marks. This would explain why the defendant in his drunk state thought the gun was no longer loaded. Counsel also points out that the expert established that the gun fired even though it was malfunctioning. And again, the problem is how the gun was firing when the expert was manipulating it doesn't tell us how the gun was firing and how Brian thought the gun was firing prior to the shooting. If the bull was jammed in some certain position and became unjammed at some point and he had no idea that that was going on with the gun. I think one thing that the expert found in their testing was that the gun would fire when racked without the trigger being pulled. That might explain why you find two live shells and then a shot if at some point when he racked it, the gun went off without him pulling the trigger. But this evidence of the malfunction of the gun just lets us know that it's not really clear what Brian knew about what this gun was capable of, not based on what the expert found after the gun had been jammed. Isn't it true that he well knew that it was capable of malfunctioning because he modified the firearm himself? I mean, he changed, I think, the stock or he actually was the one who modified the gun, isn't he? He modified the gun, but the only evidence we have about what he thought trying to attach this custom handle did is when he showed his brother that he broke his gun and it wouldn't fire anymore. Now it just popped out shells when you racked it. So I don't think there's any evidence that him modifying it was to make it so that it would fire in all these different ways. No, that wasn't my question or my intent. My question was he knew that it was a problem. I think he knew it was a problem. He knew that it was malfunctioning, but the question for the jury, whether he thought the malfunction was that it wouldn't fire anymore versus whether he knew when he grabbed it that it was going to cause substantial injury or possibly death. So what about the statement he made, come here so I can blow your head off? I mean, you know, like I said. That came in unobjected to or objected to? Unobjected to. I think it was the. Comes in and you have a woman who's got her face blown off. I think, again. Pretty overwhelming. Defense counsel is not contesting that Brian was trying to terrify his girlfriend and that he was hurting her and that he should have been doing those things. But if he was popping out shells to try and terrify his girlfriend, that's a very different thing from knowing that his gun was capable of firing when he was doing that. Was he charged with intent to commit murder or did it say that he knew it could cause great bodily harm? Knowing that there's a substantial. It's intent or knowing that there's a substantial chance. Right. So there's an option. So it was in the alternative in the charging document? Right. And I think that knowing, even when you look at knowing that it can cause substantial damage, is it knowing or is it recklessness when you have a modified gun that you believe isn't capable of firing? I'd also like to point out, well, one officer who heard him say she woke me up said he was perfectly calm when this happened. The other officer who transferred to the police station said that he was hysterical asking for them to please wake her up. Just wake her up. Just wake her up. And that he was hysterical. Those were the officer's words. And the last thing I'd like to say is that the state is, again, assuming that the hearsay evidence from Sharon would have been admissible. But this evidence of bruising was conditionally relevant evidence. So I don't think there can be any doubt that it was fair for that evidence to go before the jury without any evidence supporting that the condition was true, that condition being that Brian caused those bruises. This is something that defense counsel was trying to keep out, like trying very hard to keep out in the trial court because he thought it just was not reliable enough evidence. And here I think the trial court tried to come up with a split decision to satisfy both parties, but the end result was that that decision led in conditionally relevant evidence without evidence to support the condition. And I think that, as a matter of law, is wrong. And that in this case, that evidence was relied on in trying to convince the jury that this wasn't an accident, this wasn't a terrible tragedy, this was an intentional murder that had been coming for years. And I think that's prejudicial. And that is, in fact, preserved error. And I also think, you know, the things that came up during the closing argument, those are some of the last things the jury is hearing. That's when the state is putting together their case of how it is that they've proven this was knowing. And I think they were relying on emotion just as much as they were relying on evidence. For that reason, we ask for a reverse. Thank you, counsel. We'll take this consented advisement to issue a written ruling. The court will be in recess until 9 tomorrow.